1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALERIE R. GENTRY,                                  No. C 14-04454 WHA

          Plaintiff,

  v.                                                              **ORDER GRANTING PLAINTIFF'S
                                                                  MOTION FOR SUMMARY
CAROLYN W. COLVIN,                                JUDGMENT AND DENYING
Acting Commissioner of Social Security,      DEFENDANT'S CROSS-MOTION
                                                                  FOR SUMMARY JUDGMENT**

          Defendant.
                                      /

**INTRODUCTION**

In this social security appeal, the parties make cross-motions for summary judgment

seeking judicial review of an administrative law judge's ruling that denied the plaintiff disability

insurance benefits. For the reasons herein, the decision of the ALJ is **REVERSED**. This matter is

**REMANDED** for the immediate award of benefits.

**STATEMENT**

    **1.**    **PROCEDURAL HISTORY.**

In July 2011, plaintiff Valerie Gentry filed an application for Title II Social Security

disability insurance benefits. She alleged that she had been unable to work since March 2010

due to a left rotator cuff injury and that she was further limited by post traumatic stress disorder.

The cause of plaintiff's conditions are not stated in the administrative record, but the fact that she

suffers from these injuries is not disputed (AR 19).

1    The Commissioner denied plaintiff's application for disability insurance benefits in 2011

2    and again upon reconsideration in February 2012.  Plaintiff's application proceeded to an

3    administrative proceeding before administrative law judge Amita B. Tracy.  Plaintiff was

4    represented by a non-attorney.  Plaintiff testified.  The ALJ denied relief, finding that plaintiff

5    was not disabled.  Plaintiff timely requested review by the Appeals Council, which denied the

6    request in August 2014.  Before denying relief, the ALJ granted plaintiff time to submit

7    additional evidence and records.  Plaintiff did not provide further records, nor did she request an

8    extension (AR 19–22).

9        Plaintiff seeks judicial review pursuant to 42 U.S.C. 405(g).  The parties now make

10   cross-motions for summary judgment.

11       **2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

12       At a hearing before the ALJ, plaintiff testified that she had multiple surgeries on both

13   shoulders and endured chronic pain.  Plaintiff described her disabilities as PTSD, obesity, and

14   arthritis in her arms, hips, knees, and ankles.  She testified that typing was problematic due to her

15   arthritis and carpel tunnel in her hands and that sitting for extended periods of time caused hip

16   and knee pains.  She also stated she had limitations following one surgery on her right shoulder

17   and two on her left (AR 37–55).

18       She further stated that she had problems completing remedial and personal tasks.

19   Plaintiff averred that she was only able to lift about five pounds due to the pain.  She also stated

20   that she could only walk a couple of blocks without stopping to rest and could stand for about ten

21   minutes before having to sit.  Plaintiff also had trouble driving for more than ten miles before

22   pain in her hands prevented her from continuing.

23       Plaintiff went on to briefly discuss her PTSD.  The administrative record remains unclear

24   as to the source of plaintiff's PTSD.  She testified that she sees a therapist once a month to

25   discuss the PTSD.  No doctor has recommended any medication for her PTSD.

26

27

28                                            2

*United States District Court*
*For the Northern District of California*

1

### 3.     MEDICAL EVIDENCE.

2        Medical records revealed that plaintiff suffered a left rotator cuff injury.  Plaintiff began

3  receiving treatment for that injury from Dr. John Kofoed in January 2011.  In May 2011, plaintiff

4  underwent surgery on her left shoulder.  Nevertheless, she continued to have left shoulder pain.

5  Dr. Kofoed performed a subsequent surgery.  In his musculoskeletal questionnaire that he

6  submitted in the administrative proceedings, Dr. Kofoed noted that due to pain and limitations

7  following her surgeries, plaintiff could lift a maximum of ten pounds and could only

8  occasionally carry small items.  Dr. Kofoed further noted that plaintiff was "unable to return to

9  [her] previous position due to left shoulder pain and limited motion."  Dr. Kofoed stated that

10  plaintiff's condition was "permanent and stationary" (AR 522).

11        Dr. Kofoed noted that plaintiff had a brief period of relief following her surgeries and

12  that she could knit, but she had trouble getting dressed, shaving, and driving.  Plaintiff's pain

13  worsened and she was eventually treated for pain management (AR 564–594).

14        Dr. Andrea Loveday, a Veterans' Administration psychiatrist that had treated plaintiff's

15  PTSD for one year with monthly therapy and stress management also testified.  Dr. Loveday

16  opined that plaintiff's ability to hold a normal job was seriously hindered by anxiety and PTSD,

17  particularly in jobs that would involve working with others.  Dr. Loveday averred that plaintiff's

18  afflictions could cause her to miss work four or more days per month at a normal job (AR 628).

19        The government's vocational expert testified.  The ALJ asked the vocational expert to

20  identify several occupations that a person with these afflictions could hypothetically hold.  The

21  expert discussed three occupations:  a photo copy machine operator, a press operator in a

22  laundry, and an apparel marker (AR 68).  The vocational expert said that his findings were

23  consistent with the Dictionary of Occupational Titles.

24        Both parties now move for summary judgment.  This order follows full briefing.  The

25  parties were also asked to submit supplemental briefs regarding whether a physician's opinion

26  must be credited as true if the ALJ improperly disregarded that opinion.  Plaintiff timely filed a

27  supplemental brief.  The government did not respond.

28

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2        **1.    LEGAL STANDARD.**

3        A decision denying disability benefits must be upheld if it is supported by substantial

4   evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

5   Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v.*

6   *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  It means "such relevant evidence as a reasonable

7   mind might accept as adequate to support a conclusion." *Ibid.*  The Court must "review the

8   administrative record as a whole, weighing both the evidence that supports and that which

9   detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039.  "The ALJ is responsible for

10  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;"

11  thus, where the evidence is susceptible to more than one rational interpretation, the decision of

12  the ALJ must be upheld. *Ibid.*

13        The plaintiff has the burden of proving disability. *Id.* at 1040.  Disability claims are

14  evaluated using a five-step inquiry.  20 C.F.R. 404.1520.  In the first four steps, the ALJ must

15  determine:  (i) whether the claimant is working, (ii) the medical severity and duration of the

16  claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1,

17  Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her

18  previous job; step five involves a determination of whether the plaintiff is capable of making an

19  adjustment to other work.  20 C.F.R. 404.1520(a)(4)(i)–(v).  In step five, "the burden shifts to the

20  Commissioner to show that the plaintiff can engage in other types of substantial gainful work

21  that exists in the national economy." *Andrews*, 53 F.3d at 1040.  If the ALJ chooses to use a

22  vocational expert, hypothetical questions asked "must 'set out all of the plaintiff's

23  impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).

24        The use of the Medical-Vocation Guidelines at step five is proper "where they *completely*

25  *and accurately* represent" a claimant's limitations and the claimant can "perform the *full* range

26  of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in

27  original).  Although "the fact that a non-exertional limitation is alleged does not automatically

28

4

**United States District Court**
For the Northern District of California

1  preclude application of the grids," the ALJ must first determine whether the "plaintiff's

2  non-exertional limitations significantly limit the range of work permitted by his exertional

3  limitations." *Id.* at 1102.

4  **2.    THE ALJ'S FIVE-STEP ANALYSIS.**

5  Before conducting the five-step analysis, the ALJ found that plaintiff met the insured

6  status requirements of the Social Security Act through June 2016.  Plaintiff contends that the

7  ALJ erred at step three by finding that her residual-functional capacity enabled her to perform

8  modified light work, which involved lifting twenty pounds and frequently carrying small objects,

9  rather than limiting her sedentary work, which only involved lifting a maximum of ten pounds.

10  She contends a proper determination of her residual-functional capacity would have resulted in a

11  direct finding that she was disabled.  Plaintiff also contends that the ALJ's findings at step five

12  were erroneous because they were based on a defective residual-functional capacity

13  determination and unsupported by substantial evidence.

14  **A.    Step One:  Is The Plaintiff Working?**

15  In step one of the sequential evaluation process, the ALJ found that plaintiff had not

16  engaged in substantial gainful activity throughout the entire period at issue, although she had

17  performed some "light duty work" between her alleged onset date in March 2010 and May 2010,

18  when her employer could no longer offer that work.

19  **B.    Step Two:  Medically Determinable Impairment?**

20  In step two of the sequential evaluation process, the ALJ found that plaintiff's medical

21  records revealed a left rotator cuff injury for which she had had multiple surgeries.   The ALJ

22  found there was no objective medical evidence to support plaintiff's alleged arthritis or other

23  pain in her hands.  Plaintiff was given the benefit of the doubt by the ALJ regarding the

24  possibility that PTSD could cause problems in the workplace (AR 22).

25  **C.    Step Three:  Severity Of Impairment**.

26  At step three of the sequential evaluation process the ALJ found that plaintiff's injuries

27  did not meet the necessary severity of impairments listed in the list of impairments described in

28  5

**United States District Court**
For the Northern District of California

1   20 C.F.R. 404, Subpart P, Appendix 1.  The ALJ found that there was no evidence supporting the

2   arthritis claim and that the mental illness (PTSD) was not of the severity necessary to meet the

3   rules set forth in Sections 12.04, 12.06, nor any of the other sections of the list of impairments

4   (AR 23).  The ALJ concluded that plaintiff had the residual-functional capacity to perform "light

5   work" as defined in 20 C.F.R. 404.1567(b), subject to certain non-exertional limitations (AR

6   23–25).

7             **D.**       **Step Four:  Capable Of Performing Her Previous Job?**

8   At step four of the sequential evaluation process, the ALJ concluded that plaintiff was

9   unable to return to any of her past relevant work.

10             **E.**       **Step Five:  Capable Of Other Work?**

11   Finally, at step five, with the assistance of a vocational expert, the ALJ found that

12   plaintiff's residual-functional capacity enabled her to work as a photocopy machine operator, a

13   laundry press operator, or an apparel marker, all of which entailed light work.  Accordingly, the

14   ALJ found plaintiff was not disabled and therefore not entitled to social security insurance

15   benefits.

16           **3.**     **THE ALJ ERRED IN ASSESSING PLAINTIFF'S
   RESIDUAL-FUNCTIONAL CAPACITY.**

17

18   Plaintiff argues that the ALJ made a legal error by disregarding the conclusions of her

   treating physician when determining her residual-functional capacity without clear and

19   convincing reasons for doing so.  Dr. Kofoed, the physician that treated plaintiff for issues with

20   her shoulders, submitted a form indicating that plaintiff was limited to lifting ten pounds

21   maximum and that she could only occasionally carry small objects (AR 521).  Dr. Kofoed also

22   concluded that plaintiff's status was "permanent and stationary" (AR 522).

23   The ALJ stated that she "gave great weight" to Dr. Kofoed's opinion in her decision, but

24   she concluded that plaintiff's residual-functional capacity was for "light work," which "involves

25   lifting no more than *20 pounds* at a time with *frequent* lifting or carrying of objects weighing up

26   to 10 pounds."  20 C.F.R. 404.1567(b) (emphasis added).  By contrast, sedentary work "involves

27

28

**United States District Court**
For the Northern District of California

1    lifting *no more than ten pounds* at a time and occasionally lifting or carrying articles like docket

2    files, ledgers, and small tools." 20 C.F.R. 404.1567(a) (emphasis added).

3         "As a general rule, more weight should be given to the opinion of a treating source than

4    to the opinion of doctors who did not treat the claimant . . . .  At least where the treating doctor's

5    opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing'

6    reasons." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  Furthermore, even where there

7    are contradictions among physicians, the ALJ must give "specific and legitimate reasons

8    supported by substantial evidence in the record" for disregarding a treating physician's opinion.

9    *Id.* at 830.  Finally, if an ALJ's residual-functional capacity finding conflicts with an opinion

10   from a medical source, she "must explain why the opinion was not adopted."

11        Both sides agree that the ALJ did not, in fact, ascribe great weight to all of Dr. Kofoed's

12   opinion and that she did not incorporate his medical assessment that plaintiff was limited to

13   sedentary work or to lifting ten pounds into her residual-functional capacity determination.  The

14   parties disagree as to whether the ALJ's decision to discount those aspects of Dr. Kofoed's

15   opinion was proper.  The government contends that the ALJ properly disregarded portions of Dr.

16   Kofoed's opinion that were inconsistent with the record.  Plaintiff argues that the ALJ failed to

17   provide specific and legitimate reasons for disregarding that opinion and that the government's

18   arguments are impermissible post hoc rationalizations not actually relied upon below.

19        The government notes that in addition to Dr. Kofoed's opinion, the ALJ considered the

20   opinions of three other physicians that examined plaintiff while she was seeking worker's

21   compensation from 2010–11.  One of those physicians instructed plaintiff to completely cease

22   work due to her left shoulder condition (AR 243).  Another opined that she should not use her

23   left shoulder for work and later added a restriction that she could lift and carry no more than ten

24   pounds (AR 434).  A third physician evaluated plaintiff's right shoulder only and noted a lifting

25   limitation of twenty pounds *for that shoulder* (AR 567).  The ALJ did not discuss the specific

26   details of those opinions in her decision but did note that Dr. Kofoed's assessment was consistent

27   with those opinions.  The ALJ also noted, however, that some of the other physicians' opinions

28                                                  7

**United States District Court**
For the Northern District of California

1   stated plaintiff was "temporarily disabled around the time of her surgery but otherwise able to

2   work with restrictions on the use of her upper extremities," although the limitations imposed by

3   Dr. Kofoed  were permanent (AR 24).  Nevertheless, Dr. Kofoed's opinion came subsequent to

4   the other opinions, after plaintiff's condition had deteriorated.

5          Notwithstanding the "great weight" the ALJ supposedly gave to Dr. Kofoed's opinion,

6   she concluded that plaintiff could perform "light work."  The ALJ provided no explanation for

7   disregarding Dr. Kofoed's conclusions.  The government cites *Lewis v. Apfel*, 236 F.3d 503, 512

8   (9th Cir. 2001), for the contention that the ALJ did not need to *specifically link* her decision to

9   disregard Dr. Kofoed's conclusions to citations in the record, as long as she "note[d] arguably

10  germane reasons" for dismissing his opinion.  In *Lewis*, the ALJ discounted the credibility of the

11  claimant's family members' testimony and noted several examples of inconsistencies with the

12  claimant's testimony, although the ALJ did not explicitly state that his decision was based on

13  those inconsistencies.  The fact that the ALJ identified those inconsistencies was sufficient to

14  pass muster.  By contrast, the government here does not point to a single part of the ALJ's

15  decision noting a germane reason for discounting Dr. Kofoed's assessment, even if that reason

16  was not explicitly relied upon.  Instead, the government simply points to the whole record and

17  posits that the ALJ *could* have found inconsistencies that would form a basis for setting aside Dr.

18  Kofoed's assessment, even if the ALJ failed to articulate those inconsistencies.

19         The government's *post hoc* rationalization of the ALJ's decision cannot be credited.  The

20  ALJ's decision "must be measured by what [she] did, not by what [she] might have done."

21  *Securities & Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943).  Moreover,

22  even if *Chenery* did not preclude the government from relying on its post hoc interpretation of

23  the record, the record does not support the position it advances.  Dr. Kofoed's assessment was

24  perfectly consistent with that of the other physicians who examined plaintiff.

25         The government also argues that Dr. Kofoed's assessment was inconsistent with the fact

26  that plaintiff performed "light duty" work through May 2010.  The ALJ decision did not offer

27  that reasoning, so the government's reliance on it now cannot rescue the ALJ's decision.  Even

28

**United States District Court**
For the Northern District of California

1   so, the record demonstrates that Dr. Kofoed's assessment post-dated plaintiff's light duty work

2   and that her shoulder conditions deteriorated after she ceased her work.  Accordingly, the

3   government's post hoc rationalization, even if it could be considered, is unavailing.

4   Furthermore, plaintiff's work during that period was classified as "light duty" under California

5   worker's compensation regulation, which uses a distinct standard from "light work" for Social

6   Security purposes.  The worker's compensation standard pertains to whether a claimant sits,

7   stands, or walks, throughout the day and has nothing to do with strength.  *See Desrosiers v.*

8   *Secretary*, 846 F.2d 573, 576 (9th Cir. 1988).  Thus, the fact that plaintiff did "light duty" work

9   does not contradict Dr. Kofoed's conclusion.

10          The ALJ's failure to provide specific, legitimate reasons for disregarding Dr. Kofoed's

11   assessment while simultaneously asserting that she gave that assessment great weight remains

12   fatal to the government's case, and the government cannot now rescue that decision with

13   unpersuasive post hoc justifications.  Had Dr. Kofoed's opinion been properly credited, as it

14   must under *Lester*, plaintiff would have been deemed limited to sedentary work.  From the outset

15   of the process, the ALJ asserted that plaintiff had no "transferrable skills" (AR 66–67).  Given

16   plaintiff's age and education level (neither of which is disputed by either party), her limitation to

17   sedentary work, and her lack of transferrable skills, plaintiff must be deemed disabled through a

18   direct application of 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.14, without any need for

19   further evaluation, as that rule specifically directs a finding of "disabled" for a claimant with

20   plaintiff's status and limitations.

21          Where it is clear that the ALJ would be required to award benefits if the disputed

22   testimony was properly credited, as here, and there are no more outstanding issues to resolve, it

23   may be unnecessary to conduct any further administrative proceedings before awarding benefits.

24   *Varney v. Secretary of Health & Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988).  Indeed

25   it would be an abuse of discretion *not* to remand for an award of benefits in these circumstances

26   unless "an evaluation of the record as a whole creates *serious doubt* that a claimant is, in fact,

27   disabled . . . ."  *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (emphasis added).  The

28

9

**United States District Court**
For the Northern District of California

1    government contends that even if Dr. Kofoed's opinion is accepted, credibility issues in

2    plaintiff's own testimony raised serious doubts as to whether she was, in fact, disabled.

3              **4.      PLAINTIFF'S CREDIBILITY ISSUES DO NOT
                        RAISE SERIOUS DOUBTS THAT SHE IS DISABLED.**

4              The ALJ found that plaintiff's testimony about the "intensity, persistence and limiting

5    effects" of pain in her hands was "not entirely credible" because she was able to perform certain

6    activities such as knitting, typing, gardening, and cooking, even though she testified she could

7    not do work that involved typing or other work with her hands, and that she had trouble driving.

8    The ALJ also noted that plaintiff had not provided objective medical evidence of the

9    impairments in her hands.  Thus, the ALJ discounted plaintiff's testimony regarding the scope of

10   her limitations.  Nevertheless, even if plaintiff's testimony about the pain in her hands was

11   properly given little weight, the doubts about her alleged impairments do not bear on plaintiff's

12   limitation to lifting ten pounds, or to sedentary work generally.  Thus, plaintiff's credibility

13   issues do not raise serious doubts as to whether she should have been limited to sedentary work

14   and therefore deemed disabled through a straightforward application of Rule 201.14.

15             The government also argues that plaintiff was able to perform "light duty" work for two

16   months after her alleged onset date of March 2010.  As discussed above, "light duty" in that

17   context refers to how often plaintiff had to *stand*, and had no bearing on how much she could *lift*.

18   The government's argument is unpersuasive.

19             Once Dr. Kofoed's assessment is properly credited, no issues remain as to whether

20   plaintiff is disabled.  Thus, this order need not address plaintiff's arguments pertaining to the

21   ALJ's discounting of Dr. Lovejoy's testimony or the alleged errors in the treatment of the

22   vocational expert's testimony.  The only item remaining is the payment of benefits.

23

24

25

26

27

28                                                      10

United States District Court
For the Northern District of California

**CONCLUSION**

For the reasons stated herein, the decision of the ALJ is **REVERSED**, and the case is hereby **REMANDED** for the sole purpose of awarding benefits.

**IT IS SO ORDERED.**

Dated:    October 19, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11